UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| WARREN ARTHUR REHKOP, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-cv-00007 SRC |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

### Memorandum and Order

This matter comes before the Court on Plaintiff Warren Arthur Rehkop's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Rehkop's application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. The Court affirms the Commissioner's decision.

**I.     Procedural history**

Rehkop filed his application for benefits on January 5, 2017.  Tr. 15.  The Social Security Administration initially denied his application on April 19, 2017.  Tr. 65–69.  Rehkop asked for a hearing before an ALJ on May 25, 2017 and the ALJ held a hearing on September 12, 2018.  Tr. 25, 27–57, 72–73.  The ALJ denied Rehkop's application in a decision dated December 17, 2018.  Tr. 15–23.  On November 18, 2019, the Appeals Council denied Rehkop's request for review.  Tr. 1–3.  As such, the ALJ's decision stands as the final decision of the Commissioner.

**II.    Decision of the ALJ**

The ALJ determined that Rehkop has not engaged in substantial gainful activity since January 5, 2017, the application date.  Tr. 17.  The ALJ found that Rehkop has severe

impairments of cellulitis of the right leg and Lyme disease.  Tr. 17–18.  The ALJ found that Rehkop has a non-severe impairment of anxiety.  Tr. 17.  The ALJ found that Rehkop does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 19.  After considering the entire record, the ALJ determined that Rehkop had the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c).  Tr. 19–21.

The ALJ found that Rehkop could perform past relevant work as an auto detailer, nursery worker, and in apartment maintenance.  *Id*. at 21–22.  The ALJ found that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  *Id*.  Thus, the ALJ concluded that Rehkop "was not under a disability."  Tr. 22.  Rehkop appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

**III.   Legal standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137 (1987)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

3

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3) (emphasis added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id*.  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908

4

(8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

**IV.    Discussion**

Rehkop argues that the ALJ "committed reversible error when she failed to develop the record by not ordering a consultative examination of [Rehkop]'s health impairment of [a]nxiety." Doc. 17 at 7. Rehkop contends that a lack of evidence regarding his mental impairment required the ALJ to purchase a consultative examination under 20 C.F.R. 416.919a(b). The Court disagrees.

"While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue,* 648 F.3d 605, 612 (8th Cir. 2011) (citing *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994)). "The ALJ is required to order medical examinations and tests *only if* the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.* (citing *Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir. 1986)) (emphasis added). Further, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Haley v. Massanari,* 258 F.3d 742, 749–50 (8th Cir. 2001) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Additionally, "reversal due to failure to develop the record is only warranted where such

5

failure is unfair or prejudicial." *Id*. at 749 (quoting *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995)).

In accordance with this framework, the regulations provide the following guidance for when a consultative examination may be purchased:

> (a) General. If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination. . . . Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.
>
> (b) Situations that may require a consultive examination. We may purchase a consultive examination to try and resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim. . . .

20 C.F.R. 416.919a.  The regulations therefore instruct ALJs to purchase consultative examinations when the record contains insufficient evidence to reach a determination regarding a claimant's disability.  Notably, part of the ALJ's assessment regarding whether she has sufficient information includes considering the claimant's forms containing their allegations.  *Id*.; *see also Matthews v. Bowen*, 879 F.2d 422 (8th Cir. 1989).  Accordingly, the Court must assess whether sufficient evidence existed for the ALJ to reach her decision.

Here, the record contained sufficient evidence for the ALJ to reach her determination that Rehkop's anxiety did not constitute a severe impairment.  The regulations provide specific criteria to evaluate mental impairments.  *See* 20 C.F.R. § 416.920a.  The ALJ must first determine whether a claimant has a medically determinable mental impairment and then rate the degree of functional limitation resulting from the impairment.  *See* 20 C.F.R. § 416.920a(b).  In rating the degree of limitation, the ALJ "considers all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors" such "chronic mental disorders, structured settings,

6

medication, and other treatment." *See* 20 C.F.R. § 416.920a(c)(1).  The ALJ bases its rating of the claimant's functional limitation on "the extent to which [the] impairment[] interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  *See* 20 C.F.R. § 416.920a(c)(2).  To rate the claimant's degree of functional limitation, the ALJ must consider four broad functional areas and rate the claimant's degree of limitation in each area as none, mild, moderate, marked, or extreme.  *See* 20 C.F.R. § 416.920a(c)(3–4). The four functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  *See* 20 C.F.R. § 416.920a(c)(3).  The ALJ properly considered these four areas in finding that Rehkop does not have a severe mental impairment.

Beginning with the first functional area, the ALJ found that Rehkop has no limitation in understanding, remembering, or applying information.  Tr. 17.  In reaching this conclusion, she assessed Rehkop's "ability to understand and learn terms, instructions, and procedures; follow one or two step oral instructions or carry out a task; describe work activity to another individual; ask and answer questions as well as provide explanations; recognize a mistake and correct it; identify and solve problems, sequence multi-step activities; and use reason and judgment to make work related decisions." Tr. 17–18.  The ALJ noted that Rehkop does not need any reminders to groom, go places, or take his medication, and that he can follow both written and spoken instructions.  Tr. 18.  Based on these facts, the ALJ found that Rehkop has no limitations in understanding, remembering, or applying information.  Tr. 18.

Substantial evidence supports the ALJ's conclusion that Rehkop has no limitations in understanding, remembering, or applying information.  In his function report, Rehkop states that he does not need special reminders to take care of his personal needs, groom, or take his

7

medicine. Tr. 159. He also reports that he can count change and use a checkbook. Tr. 160. Rehkop notes that he "reads a lot," specifically stating that he reads the Bible every day. Tr. 158, 161. Rehkop further states that he can pay attention "as much as needed," has the ability to finish what he starts, and describes his ability to follow written and spoken instruction as "good." Tr. 162. Lastly, Nurse Heather Cheaney examined Rehkop and observed that he has an intact memory. Tr. 228. Accordingly, substantial evidence supports the finding that Rehkop has no limitations in the first functional area.

Shifting to the second functional area, the ALJ found that Rehkop has no limitation interacting with others. The ALJ reached this conclusion based of her review of the evidence related to Rehkop's "ability to cooperate with others, ask for help when needed, handle conflicts with others, initiate or sustain conversation, understand and respond to social cues, and respond to requests, suggestions, criticism, correction, and challenges." Tr. 18. The ALJ noted that Rehkop shops in stores, can go out alone, does not have issues getting along with others, and spends time with others daily. Tr. 18. Given this evidence, the ALJ found that Rehkop has no limitations in this functional area.

Substantial evidence supports the ALJ's conclusion that Rehkop has no limitations in the second functional area. In his function report, Rehkop states that he leaves his house once or twice a day and regularly attends church. Tr. 160, 161. He also states that a typical day involves spending significant time talking with family and friends on the phone. Tr. 158. Rehkop explains that he does not have any problems getting along with family, friends, neighbors, or authority figures, and has never been fired or laid off from a job due to problems getting along with other people. Tr. 162. Nurse Cheaney observed that Rehkop displayed normal

8

communication ability and made good eye contact.  Tr. 227–28.  Therefore, substantial evidence supports the ALJ's finding that Rehkop has no limitations in his ability to interact with others.

Next, the ALJ considered the third functional area, which assesses the claimant's ability to concentrate, persist, and maintain pace.  She evaluated Rehkop's "ability to sustain work, using appropriate production standards, in either real or simulated work tasks, e.g., task completion within acceptable time periods."  Tr. 18.  The ALJ found that Rehkop has no limitations in this area, noting that he reads every day and alleges that he has no limitations paying attention.  Tr. 18.

Substantial evidence supports the ALJ's finding that Rehkop has no limitation in his ability to concentrate, persist, and maintain pace.  Rehkop states that he "reads a lot," specifically stating that he reads the Bible every day.  Tr. 158, 161.  Rehkop further states that he can pay attention "as much as needed," has the ability to finish what he starts, and describes his ability to follow written and spoken instruction as "good."  Tr. 162.  Accordingly, substantial evidence supports the ALJ's conclusion that Rehkop has no limitation with respect to the third functional area.

Lastly, the ALJ found that Rehkop has no limitation in adapting or managing himself.  She based her rating on Rehkop's "ability to regulate emotions, control behavior, and maintain well-being in work setting."  Tr. 18.  She evaluated this ability by assessing whether Rehkop could "respond to demands, adapt to changes, manage psychologically-based symptoms, distinguish between acceptable and unacceptable work performance, set realistic goals, make plans independently of others, maintain personal hygiene and attire appropriate to a work setting, as well as being aware of normal hazards and taking appropriate precautions."  Tr. 18.  The ALJ noted that Rehkop lives at home alone, performs household duties without encouragement, and

9

has no issues with personal care, other than moving slower than usual when dressing.  Tr. 18.  Based on these facts, the ALJ concluded that Rehkop has no limitation in the fourth functional area.

Substantial evidence supports the ALJ's finding.  Rehkop lives alone and prepares his own meals.  Tr. 157, 159.  He does not need reminders to take care of his personal needs, groom, or take his medicine.  Tr. 159.  He performs housework and shops.  Tr. 159, 160.  He can count change and use a checkbook.  Tr. 160.  Finally, he drove two and a half hours to the ALJ hearing without stopping.  Tr. 47–48.  Thus, substantial evidence supports the ALJ's finding that Rehkop has no limitations in his ability to adapt or manage himself.

In sum, substantial evidence supports that Rehkop's anxiety does not significantly limit his mental ability to perform basic work activities.  *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."(citing *Bowen v. Yuckert*, 482 U.S. 137 (1987)).  Thus, substantial evidence supports the ALJ's finding that Rehkop's anxiety does not constitute a severe mental impairment.

Rehkop does not dispute any of the ALJ's specific findings or point to evidence in the record that would support that Rehkop has a severe mental impairment.  Instead, as noted above, Rehkop claims that the ALJ needed to purchase a consultative examination because the limited amount of medical records in this case meant that the ALJ lacked sufficient information to reach a conclusion.

The Court finds Rehkop's argument misplaced as the circumstances did not require the ALJ to purchase a consultative examination.  Rehkop conflates a lack of evidence to support that he has a severe mental impairment with the ALJ's having insufficient evidence to reach a

decision that he did not have a severe mental impairment.  As an initial matter, despite having the burden of proving his disability and providing medical evidence regarding the existence and severity of his impairments, *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013), Rehkop did not even allege he has a mental health impairment in his application for benefits.  Tr. 146.  Nor did he or his attorney request a consultative examination.  *Knox v. Colvin*, 637 F. App'x 956, 960 (8th Cir. 2016) (finding that not requesting that the ALJ obtain a psychological examination supports that an ALJ would not be alerted to a severe mental impairment); *see also Leininger v. Colvin*, No. 4:12CV623 JCH/TIA, 2013 WL 5276039, at *14 (E.D. Mo. Sept. 18, 2013).  Next, as outlined above, Rehkop made a bevy of statements in his functional report and at the hearing supporting that he does not suffer from a severe mental impairment.  Moreover, finding that the ALJ needed to purchase a consultative exam in this situation would penalize the ALJ for using Rehkop's own statements as evidence that he does not have a severe mental impairment.  Indeed, such a finding would run counter to the regulations, which explicitly permit the ALJ to consider Rehkop's "disability interview form containing [his] allegations as well as other pertinent information in [his] file" when assessing whether to purchase a consultative examination.  *See* 20 C.F.R. § 416.419a(a).

   *Byes v. Astrue*, 687 F.3d 913 (8th Cir. 2012) presented similar facts to the current matter.  There, limited evidence in the record addressed the claimant's mental impairment, and a physician's medical report indicated that the claimant had a mental impairment.  *Id*. at 916–17.  The claimant argued that such circumstances required the ALJ to further develop the record.  *Id*. at 916.  However, the physician's report also stated that the claimant had "the capacity to cope with mental cognitive work demands as long as they were not to be read or written." *Id*. at 916.  Further, the claimant reported that he could "pay bills, count change, handle his own finances,

and had written reports and used technical skills and knowledge in his past jobs . . . as a carpenter and mechanic." *Id*. The court concluded that these facts constituted substantial evidence supporting that the claimant did not have a severe mental impairment and thus the ALJ made an informed decision. *Id*. at 917.

Like *Byes*, evidence in the record supports that Rehkop has anxiety. Rehkop received an anxiety diagnosis following two different medical examinations, including one by Nurse Cheaney. Tr. 223-24, 226-28. He is also prescribed medication for anxiety. Tr. 224. Additionally, at the hearing, Rehkop stated that the medicine he is prescribed for his anxiety disorder makes him drowsy. Tr. 42, 50. Nevertheless, these facts did not require the ALJ to further develop the record because the record provided a sufficient basis for the ALJ's decision. *Haley*, 258 F.3d at 749–50 (quoting *Anderson*, 51 F.3d at 779).

Similar to the physician's report in *Byes*, Nurse Cheaney's report noted that Rehkop displayed normal communication ability, maintained good eye contact, had an intact memory, appeared alert, oriented to time, place, and person, displayed no acute distress, and appeared well-groomed, well-nourished, and well-developed. Tr. 227. Additionally, the limited references to his anxiety at the hearing do not indicate that Rehkop has a severe mental impairment. For example, his testimony regarding his anxiety pales in comparison to the claimant's testimony in *Dozier v. Heckler*, 754 F.2d 274, 275 (8th Cir. 1985). There, the court remanded for failure to develop the record following the claimant's testimony, corroborated by her daughter, that she suffered from migraines two-to-three times a week that "came on without warning, were accompanied by nausea and vomiting, affected her vision and made her weak." *Id*. Finally, as explained above, Rehkop reads every day, can count change and use a checkbook, cooks, and cleans. He also formerly worked as an auto detailer and general laborer.

12

Tr. 21.  For all these reasons, substantial evidence supports the ALJ's decision that Rehkop did not have a severe mental impairment and thus the ALJ made an informed decision.

Lastly, Rehkop contends that *Battles v. Shalala*, 36 F.3d 43 (8th Cir. 1994) compels this Court to find that the ALJ committed reversible error.  However, the present case is readily distinguishable from *Battles*.  In *Battles*, the court found that the ALJ failed to develop the record because the hearing only lasted ten minutes and the claimant testified "that he was virtually illiterate, had not worked in fifteen years, ate out of garbage cans, slept in other people's cars, and no relationships with other persons." *Id*. at 45.  This testimony "raise[d] an issue as to [the claimant's] mental and psychological capacity to engage in substantial gainful activity," and the ALJ failed to develop the record regarding the claimant's mental impairment. *Id*. (citation omitted).

In contrast to *Battles*, the ALJ held a forty-five-minute hearing and, recognizing the limited amount of medical records, explained that she "need[ed] a lot of discussion" from Rehkop and his attorney regarding whether he had a severe impairment.  Tr. 31.  Additionally, in line with his statements in his functional report, Rehkop's testimony reflected an individual that did not suffer from a severe mental impairment.  Unlike the claimant in *Battles*, Rehkop reads every day, prepares his own meals, lives by himself in a house, and has good relationships with family, friends, and neighbors.  Thus, when viewed in combination with his functional report and the limited medical records, Rehkop's testimony did not raise as issue as to his mental and psychological capacity to engage in substantial gainful activity.

In sum, substantial evidence supports the ALJ's decision that Rehkop did not have a mental impairment and thus the ALJ did not need to further develop the record by purchasing a consultative exam.  The Court therefore concludes that the ALJ did not commit reversible error.

13

## V.      Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Rehkop's Complaint with prejudice.  A separate judgment will accompany this Memorandum and Order.

So Ordered this 18th day of March 2021.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**